

FILED ____ LODGED
RECEIVED ____ COPY

MAR 1 6 2006

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ E DEPUTY

Andrew Wright

5 Lambert Johnson Drive

Ocean, NJ 07712

732-693-2851

Defendant, Pro Se

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT COURT OF ARIZONA

Ultimate Creations, Inc.,

    Plaintiff,                 )     Case No.: CV05-3713-PHX-DKD

    vs.                      )

Andrew Wright, and Jane Doe Wright,    )   **DEFENDANT'S REPLY BRIEF IN**

    Defendant              )   **FURTHER SUPPORT ITS MOTION TO**
                                 )   **DISMISS PURSUANT TO RULE 12(b).**

                                 )

     Defendant Andrew Wright ("Wright") submits this brief to reply to further support his motion to dismiss the complaint of Ultimate Creation's Inc. ("Ultimate") for improper venue and for lack of personal jurisdiction, both pursuant to Rule 12(b), without submitting himself to the jurisdiction of this Court.

## INTRODUCTORY STATEMENT

     Ultimate is continuing its disgraceful attempt to go forward with this empty lawsuit by twisting the basics of the law and wasting the precious time of the Court.  Ultimate has not shown any evidence, real **or** imagined, that stands in the way of this Court granting Wright's motion to dismiss.

     Wright, while fully abiding to the terms of the Film Documentary Development Contract, dated February 22, 2005, and Amendment No. 1 to the Film Documentary Development Contract, dated July 25, 2005, (collectively "Contract"), has expended a significant amount of time, energy and finances towards the completion of the project.  It must be noted that Wright's

company, BuzzMEDIA Productions, LLC ("BuzzMEDIA"), approached Warrior with the idea for this project.  This project belongs to BuzzMEDIA, and BuzzMEDIA has hired Ultimate to cooperate in its production.

Ultimate has blatantly disregarded its agreed upon obligations under the Contract by constantly refusing Wright the opportunity to interview Warrior, which is obviously an integral part of the project.  When Wright began to insist that Warrior fulfill his commitment, Warrior refused unless Wright sign an unreasonable Amendment No. 2. (Exhibit A)  Amendment No. 2 sets forth numerous lies and inaccuracies regarding Wright abilities and intentions, and its purpose was to alter all of the essential terms of the Contract in Ultimate's favor.  The main effects would have been to substantially and unreasonably limit BuzzMEDIA's time in which to complete the project, *double* Warrior's percentage of the profits, grant Ultimate full control over the project, and subject BuzzMEDIA and Wright to the laws and courts of Arizona or New Mexico.  The true result of Wright signing the Amendment No. 2 would have been Ultimate defrauding Wright out of all the material that Wright has so far produced and fully funded.

Because Wright would not sign the Amendment No. 2, Ultimate commenced this litigation with the objective of harassing Wright into signing.  This Court cannot allow Ultimate's deceitful tactics and lack of principles to aide in the deprivation of Wright's contractual and due process rights.

## ARGUMENT

### I.  ULTIMATE'S COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE.

28 U.S.C. § 1391(b) clearly states that in order for venue to be proper in this case, a civil action can be brought only in "A judicial district where any defendant resides" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Wright resides in the state of New Jersey and Ultimate has not shown that a substantial part of the events took place in Arizona.

Arizona plays no part in fulfilling the terms of the contract.  There is not one place in the Contract that names Arizona, including where notices for Ultimate are to be sent.

It is appalling that Ultimate now tries to argue that a substantial amount of the project was to be filmed or researched in Arizona. This is blatantly false. (Exhibit B, ¶ 5 and 6) If it was so integral to the project that Wright goes to Arizona, then why was this not mentioned in Ultimate's initial complaint? The initial complaint only mentions Arizona as the state in which Ultimate is incorporated.

In addition, it was never part of the Contract that Wright was to go to Warrior's storage facility in Arizona. Warrior has sufficient memorabilia at his home that could have been used in the project. (Exhibit B, ¶ 7)

The fact that it was never intended by Ultimate or Wright to film in Arizona is proven by the project's two tentative production schedules. One is the initial production schedule that was given to Warrior in the beginning of April 2005. (Exhibit C) The other is an updated, revised production schedule that was sent to Warrior at the end of August 2005. (Exhibit D) There is not one place, on either the original or revised production schedules, that mentions Arizona for any reason whatsoever. An email from Warrior states that he had received the updated schedule, but he does not mention that Wright also needs to go to Arizona. (Exhibit E)

Ultimate continues to distort the civil protections of the judicial system by stating in its response that Warrior has no contact with New Jersey and was not to travel to New Jersey for the project. This statement is completely irrelevant to the issue of proper venue for this case. Of course Ultimate wishes to further inconvenience Wright by trying to force him to this Court, but Arizona does not have any interest in adjudicating this case.

Because Wright does not have any contacts with the state of Arizona, the only proper venue where this claim can be brought by Ultimate, without offending the traditional notions of fair play and substantial justice, is in a New Jersey court.

## II.     ULTIMATE'S COMPLAINT SHOULD BE DISMISSED
## FOR LACK OF PERSONAL JURISDICTION

Ultimate's response states that it only needs to make a prima facie case that Wright can be subjected to the jurisdiction of this Court. Even if the Court accepts Warrior's ridiculous statements as true, Ultimate has not presented the necessary evidence to establish such a case.

To determine whether the exercise of personal jurisdiction over Wright satisfies International Shoe's "traditional notions of fair play and substantial justice," the court uses a three prong test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections[;] (2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3) [e]xercise of jurisdiction must be reasonable."

Cybercell, Inc. v Cybercell, Inc., 130 F.3d 414 (9th Cir. 1997), citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)

At the time the Contract was signed Wright did not know that Ultimate was an Arizona corporation. It was not mentioned on the Contract that Ultimate was an Arizona Corporation and the mailing address listed for Ultimate is a New Mexico address. The state name of Arizona was not mentioned anywhere in the Contract. Even if Wright knew that Ultimate was an Arizona corporation, merely signing a contract does not establish the necessary minimum contacts. The Supreme Court asked "whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985).

In addition, Ultimate has not shown, or even suggested that Wright committed any acts within the state of Arizona. Ultimate states that Wright's failure to act within the state of Arizona subjects him to the jurisdiction of this Court. Even if the Court was to take Ultimate's incredible tales as true, it does not state that Wright committed an act in Arizona. Conversely, Warrior's alleged claim that Wright failed to act in Arizona actually strengthens Wright's position that Wright does not have any contacts with the state of Arizona. Without any act or transaction by Wright with the state of Arizona, it is impossible to show that Wright purposely availed himself of the benefits and protections of Arizona's laws.

Ultimate has not satisfied the second prong of the test; that its claim arises from Wright's forum related activities. Arizona plays no part in fulfilling the terms of the contract. As stated above, there is not one place in the Contract that names Arizona. In addition, Ultimate's complaint only mentions Arizona as the state in which Ultimate in incorporated. There is not one other place in Ultimate's complaint which alleges any act committed by Wright in Arizona.

Ultimate cannot show that Wright has the necessary minimum contacts with the state of Arizona, therefore the question of reasonableness is does not need to be answered. However, it must be noted that, Arizona's exercise of jurisdiction over Wright would be completely unreasonable and would be an extreme violation of his due process rights.

Ultimate has not put forth any evidence to show that litigating this case in Arizona will not put any undue burden on Wright, except for stating in its reply that, "Litigating in Arizona places no undue burden on Wright." To date, it is clearly evident that Warrior has already placed a large amount of undue burden upon Wright, and forcing Wright to litigate this case in Arizona will substantially and significantly add to that burden, financially and otherwise. (Exhibit B, ¶ 8)

## CONCLUSION

It is blatantly obvious that Ultimate's goal is to sabotage the project through whatever immoral means it can, and to deprive Wright of all of the material Wright has produced and fully funded for the project. It is an obscene misuse of the court system that Ultimate filed this frivolous lawsuit as a way to further its dishonest objective.

Ultimate cannot be allowed to put forth false and misleading statements about Wright and about what is integral to the project as a means to subject Wright to the jurisdiction of this Court. It is clear, by a preponderance of the evidence, that the District of Arizona is an improper venue for this case. In addition, it is impossible for Ultimate to make a prima facie showing that personal jurisdiction over Wright exists. There is absolutely no need for an evidentiary hearing as there are no issues or statements put forth by Ultimate and Warrior that could possibly leave open the possibility of this Court having jurisdiction over this case or over Wright.

For the foregoing reasons, Wright respectfully requests that this Court grants his Motion to Dismiss for improper venue and for lack of personal jurisdiction.

Dated: March 10, 2006

Respectfully submitted,

By: Andrew Wright

Defendant, Pro Se

COPY of the foregoing sent by overnight FedEx
this 10th day of March, 2006, to:

Daniel D. Maynard
Maynard Cronin Erickson Curran & Sparks, P.L.C.
1800 Great American Tower
320 North Central Avenue
Phoenix, AZ 85012
Attorney for Plaintiff

**EXHIBIT A**

AMENDMENT NO. 2

to Film/Documentary Development Contract

This agreement ("Amendment No. 2") is made and entered into by and between: (i) Warrior, in his capacity as owner of and on behalf of Ultimate Creations, Inc. ("Ultimate Creations") and (ii) Andrew Wright, owner of BuzzMEDIA ("BuzzMEDIA"). Ultimate Creations and BuzzMEDIA are hereinafter each referred to a "Party" and are jointly referred to as the "Parties."

Pursuant to Article 16 (Waiver or Modification) of the Film/Documentary Development Contract (referred to hereinafter as the "FDDC") entered as of February 22, 2005, and the Amendment No. 1 entered as of July 27, 2005, which the Parties entered in consideration of the mutual promises contained herein, the Parties hereby agree to the amend the FDDC and the Amendment No. 1 indicated in the following Articles. The FDDC, as amended by, both, Amendment No 1 entered as of July 27, 2005 and this Amendment No. 2, is collectively referred to as "this Agreement:"

WHEREAS, Warrior is an individual who is a resident of Santa Fe, New Mexico;

WHEREAS, Ultimate Creations, Inc. is an Arizona corporation;

WHEREAS, Wright is a resident of Ocean, New Jersey;

WHEREAS, BuzzMEDIA, LLC is a limited liability company organized under the laws of the state of New Jersey;

WHEREAS, the Parties entered into a Film/Documentary Development Contract, effective February 22, 2005 and Amendment No. 1 entered as of July 27, 2005;

WHEREAS, the Contract, among other matters, provides for a specified plan of compensation for Warrior in connection with performance of certain obligations of his under the terms of the Contract;

WHEREAS, serious issues and concerns about Wright ("BuzzMEDIA") are held and voiced by Warrior ("Ultimate Creations") and Wright ("BuzzMEDIA") has made candid admissions concerning the essential quality, content, and eventual distribution of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] granted to Warrior in the Contract, as well as the willingness or ability of Wright ("BuzzMEDIA") to meet these distinct obligations set forth for him in the Contract, along with, including but not limited to, the provision to Warrior ("Ultimate Creations") of various required addendums that address compensation, filming and production scheduling, as well as a detailed plan for the marketing and distribution of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior];

WHEREAS, the Parties desire to achieve a settlement of these issues and concerns set forth in this Agreement, so long as both of the Parties comply with this Agreement.

*1*

1. Wright ("BuzzMEDIA") reaffirms that Warrior ("Ultimate Creations") is entitled to exclusive creative, quality, and content control over the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior], as well as any previews, trailers, or any other footage from the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] that is made available to the general public. Wright ("BuzzMEDIA") further affirms that Warrior ("Ultimate Creations") has sole discretion in approving the distribution channels for the sale of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior].

2. Wright ("BuzzMEDIA") shall provide to Warrior ("Ultimate Creations") ALL addendums relating to production (as referenced in Article 6, Article 7 of the Contract), and distribution and sales (as referenced in Article 6 of the Contract), as required by the Contract, within five (5) business days of the date of this Agreement. Wright ("BuzzMEDIA") shall also provide an exact accounting of acquired financial backing and expenditures to date. Said addendums and financial accounting should be set forth and subscribed in writing, signed by Wright ("BuzzMEDIA"), and mailed to Warrior ("Ultimate Creations") via Fed-Ex mail to the following address:

   43A CR 119 North, Santa Fe, NM 87506

3. The Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] shall be completed in its entirety and "ready for sale" for retail distribution by December 1, 2005.

4. The Parties hereby represent that each of them is over the age of eighteen (18), has carefully read Amendment No. 2, knows and understands the contents thereof, and signs Amendment No. 2 at his or her own free act and deed, after consultation with his own attorney or other qualified advisor.

5. Amendment No. 2, just as FDDC and Amendment No. 1, shall be binding on both Warrior ("Ultimate Creations") and Wright ("BuzzMEDIA"), and any of their assignees, successors, trustees or conservators.

6. Amendment No. 2 may be executed in duplicate counterparts. Copies of Amendment No. 2 bearing accurate copies of a party's signature shall be considered an original hereof for all purposes. A signature transmitted by facsimile shall be deemed equivalent to the original signature.

7. Amendment No. 2 is effective immediately upon the execution by the Parties; provided that if any party has not fully executed this Agreement on or before Monday, October 13, 2005, the signature(s) of the other parties to this Agreement may, at the option of said other party, be deemed withdrawn.

*2*

8.   Article 4 (Services to be Performed by BUZZMedia) is deleted in its entirety and the following provisions are substituted therefor:

"Wright ("BuzzMEDIA") will film, edit, produce, and offer for sale and distribution the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] in Digital Video Disk (hereinafter referred to as "DVD"), Video Home System (hereinafter referred to as "VHS"), and Television Pay-Per-View (hereinafter referred to as "PPV") formats. Wright ("BuzzMEDIA") will provide Ultimate Creations with a DVD version of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] on or before December 1, 2005. This version must, in the sole judgment of Warrior ("Ultimate Creations") and/or authorized representatives or agents of Warrior ("Ultimate Creations"), be suitable material for sale and meet Warrior ("Ultimate Creations")' standards for production and content quality. Any required revisions of the Project should be completed within Seventy Two (72) hours. Any and All originals or copies of all production materials, including but not limited to all film footage, of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] become the material property and are the copyright(ed) intellectual property of Warrior ("Ultimate Creations"). Creation of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] cannot be delegated or subcontracted without the written permission of Warrior ("Ultimate Creations").

Additional services to be performed by Wright ("BuzzMEDIA") may be required by the execution of an addendum, to be titled in the following style: Services to be Performed Addendum 1, Services to be Performed Addendum 2, and so forth.

9.   Article 7 (Issue Price and Creative Talent Compensation) is deleted in its entirety and the following provisions are substituted therefor:

"Wright ("BuzzMEDIA") and Warrior ("Ultimate Creations") will sell the DVD, VHS, and PPV versions of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] at a rate to be determined as set forth by the parties in the Sale Price Addendum.

"Wright ("BuzzMEDIA") will pay Warrior ("Ultimate Creations") the sum of Two Hundred Thousand Dollars ($200,000) as a flat fee for participation in the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior]. Wright ("BuzzMEDIA") will also pay Warrior ("Ultimate Creations") fifty percent (50%) of Profits from the sale of each DVD, VHS, or PPV version of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] that is sold.

**"Description of Profits**: After monies for production of VHS, DVD, and PPV versions of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of

*3*

Ultimate Warrior] have been recouped from the sale of any and all versions of the
Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate
Warrior], all surplus monies derived from said sales of the Project [titled
ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] are
thereafter considered Profits.

"Wright ("BuzzMEDIA") will issue an initial payment of Ten Thousand Dollars
($10,000) to Warrior ("Ultimate Creations") within five days of both parties
signing the Contract. Wright ("BuzzMEDIA") will pay Warrior ("Ultimate
Creations") the balance of the flat fee as soon as it has obtained sufficient
financial backing to complete the Project [titled ALWAYS BELIEVE: The
Authorized Documentary of Ultimate Warrior]. If Wright ("BuzzMEDIA") does
not obtain sufficient funding to pay the entire flat fee to Warrior ("Ultimate
Creations") prior to completion of the Project [titled ALWAYS BELIEVE: The
Authorized Documentary of Ultimate Warrior], Warrior ("Ultimate Creations")
shall receive one hundred percent (100%) of all profits until such time as Warrior
("Ultimate Creations") has collected the entire amount of the flat fee that is owed
by Wright ("BuzzMEDIA"). Thereafter full repayment of the Two Hundred
Thousand Dollars ($200,000) flat fee, Warrior ("Ultimate Creations") shall be
entitled to the 50% of all Profits as outlined above.

Once the Project [titled ALWAYS BELIEVE: The Authorized Documentary of
Ultimate Warrior] has been released for distribution and sale,Wright
("BuzzMEDIA") shall pay Warrior ("Ultimate Creations") the 50% of Profits on
a monthly basis. Statements of payments and sales of the Project [titled
ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] will be
provided to Warrior ("Ultimate Creations") with each payment, and Warrior
("Ultimate Creations") shall have the right to have Wright ("BuzzMEDIA") sales
records, whether in hardcopy, digital, or computerized form, audited by a third
party to be appointed by Warrior ("Ultimate Creations"), on a quarterly basis.
Warrior ("Ultimate Creations") shall have the right to purchase units of the
Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate
Warrior]] in Warrior ("Ultimate Creations") choice of VHS and/or DVD format at
actual cost. These purchase options granted to Warrior ("Ultimate Creations")
may be made in any quantities or increments determined by Warrior ("Ultimate
Creations"). All payments to Warrior ("Ultimate Creations") shall be made in
accordance to the terms to be set forth in the Payment of Compensation
Instructions Addendum."

10.    Article 8 (Use of Project [titled ALWAYS BELIEVE: The Authorized
       Documentary of Ultimate Warrior]) is deleted in its entirety and the following
       provisions are substituted therefor:

       "Wright ("BuzzMEDIA") is granted license by Warrior ("Ultimate Creations") to
       produce and distribute for sale in VHS, DVD, and PPV formats the Project [titled

*4*

ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] for period of 3 years beginning from the initial Retail Distribution date.

"Wright ("BuzzMEDIA") may use Warrior's name, the name of Warrior's Sports Entertainment/Professional Wrestling character Ultimate Warrior/Warrior, and associated images and logos for the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] for the purpose of marketing the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] to potential distributors and the general public.

"Wright ("BuzzMEDIA") may make excerpts of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] available to the general public as a preview. All such excerpts may not be released and forums for releasing such excerpts may not be designated without the prior written consent of Warrior ("Ultimate Creations").

"Wright ("BuzzMEDIA") acknowledges that Warrior ("Ultimate Creations") owns all trademark and service mark rights to the name, logo, and other identifying marks relating to the character Ultimate Warrior/Warrior. This agreement affirms that Warrior ("Ultimate Creations") owns all other rights not directly associated with the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] including but not limited to rights associated with the title, character, character's name, and images which appear in any versions of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior].

11.   Article 9 (Guarantees) is deleted in its entirety and the following provisions are substituted therefor:

"Once Wright ("BuzzMEDIA") obtains sufficient financing to ensure the completion of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior], BuzzMEDIA shall, at its own cost, insure the financial interests of Warrior ("Ultimate Creations") in the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] by purchasing a policy from a reputable company or underwriter, in the amount of Five Hundred Thousand Dollars ($500,000). Warrior ("Ultimate Creations") shall be named as the sole beneficiary for this policy."

"Should Wright ("BuzzMEDIA") fail to bring the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] to a successful PRODUCTION conclusion (i.e., not produce a film that is completed and ready to be sold in the marketplace) by December 1, 2005, Warrior ("Ultimate Creations") immediately obtains possession of, and Wright ("BuzzMEDIA") will immediately turn over, any and all versions of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior], including but not limited to all

*5*

film footage or other work completed at the time. Likewise, should the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] be completed and Wright ("BuzzMEDIA") fail to find a satisfactory National distribution deal or Major media entertainment channel for the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] by March 1, 2006, Warrior ("Ultimate Creations") immediately obtains possession of, and Wright ("BuzzMEDIA") will immediately turn over, any and all versions of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior], including but not limited to all film footage or other work completed at the time."

"Should Wright ("BuzzMEDIA") fail to live up to any of the obligations set forth in This Agreement (i.e., the FDDC, Amendment No.1, and Amendment No.2) Wright ("BuzzMEDIA") will be deemed to be in breach, and Warrior ("Ultimate Creations") shall have the option of terminating the contract, effective immediately, by making written notice to Wright ("BuzzMEDIA") via first-class mail. In the event that Warrior ("Ultimate Creations") terminates the contract due to a breach by Wright ("BuzzMEDIA"), Warrior ("Ultimate Creations") shall be entitled to keep the Ten Thousand Dollars ($10,000) that has already been paid to him by Wright ("BuzzMEDIA") as liquidated damages. Further, Warrior ("Ultimate Creations") shall be entitled to immediate possession, and Wright ("BuzzMEDIA") will immediately turn over, of all footage that has been shot for the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] up to the time of the termination, both originals and all copies, exclusively, and without any obligation whatsoever to Wright ("BuzzMEDIA") or any other party."

12.     Article 10 (Final Right of Review and Approval) is deleted in its entirety and the following provisions are substituted therefor:

"Warrior ("Ultimate Creations") and/or an authorized agent or employee of Warrior ("Ultimate Creations") retains and, both parties agree, reserves the right to give or deny final approval of the content or quality of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior]. This final determination shall be within the exclusive authority of Warrior ("Ultimate Creations") and/or one of his authorized agents or employees to make. During production, Wright ("BuzzMEDIA") shall make available to Warrior ("Ultimate Creations") any footage or materials which Warrior ("Ultimate Creations") might request, at any time during the filming, editing, or sale of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior]. Submission of requested materials should be made within forty eight (48) hours."

13.     Article 11 (Final Right of Review and Approval) is deleted in its entirety, becomes "RIGHT TO USE" and the following provisions are substituted therefor:

6

"Warrior ("Ultimate Creations") reserves the right to use images or footage from the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] during the term of the license for any purpose, regardless of whether said purpose is commercial or private in nature."

14. Article 22 (Governing Laws), as set forth by Amendment No. 1, is deleted in its entirety and the following provisions are substituted therefor:

This Agreement ("The "FDDC," "AMENDMENT NO. 1," "AMENDMENT NO. 2") shall be governed, interpreted and decided according to the substantive laws of Arizona or New Mexico, and exclusive jurisdiction for any legal action which might be required in furtherance of the Project [titled ALWAYS BELIEVE: The Authorized Documentary of Ultimate Warrior] or to remedy a breach of the Contract shall be in the State of Arizona or State of New Mexico."

15. Article 25, as set forth in Amendment No. 1, is deleted in its entirety and the following provisions are substituted therefor:

"In all respects other than as explicitly set forth in Amendment No. 1 entered as of July 27, 2005 and this Amendment 2, all provisions of the February 22, 2005 FDDC remain in full force and effect."

16. Article 26, as set forth in Amendment No. 1, is deleted in its entirety and the following provisions are substituted therefor:

"**Entire Agreement.** a. The FDDC entered as of February 22, 2005, as amended by Amendment No. 1 entered as of July 27, 2005 and, now, as amended by this Amendment No. 2, (consisting of sixteen (16)_ numbered paragraphs on nine (9) pages, including the final signature page), contains the entirety of all effective agreements between the Parties with regard to matters set forth herein or with regard to any other subject, transaction or business whatsoever, whether or not covered by the FDDC. There are no other surviving understandings or agreements, oral or otherwise, including, but not limited to those discussed in any phone calls, e-mails or other documents of any nature whatsoever, between the Parties, except as expressly set forth herein.

b. (Except as may be otherwise explicitly set forth herein) the FDDC entered as of February 22, 2005, as amended by Amendment No. 1 entered as of July 27, 2005 and this Amendment No. 2, supersedes and revokes all previous conversations, negotiations, arrangements, understandings, and information conveyed, whether oral or in writing, between any of the Parties concerning any of the subjects of this Agreement – whether or not set forth in the FDDC. Any other prior conversations, understandings, representations, promises or writings are merged into this Agreement and are extinguished. The FDDC entered as of February 22, 2005, as amended by Amendment No. 1 entered as of July 27, 2005 and as amended by this Amendment No. 2, may be further amended and modified only by an instrument in writing signed by both Parties. A photocopy of the original signed Amendment No. 2, shall be equivalent to the original signed copy of this Amendment No. 2."

7

IN WITNESS WHEREOF, the Parties have executed this Amendment No. 2 to the Film/Documentary Development Contract which they had entered as of February 22, 2005 and Amendment No. 1 entered as of July 27, 2005.

Signatures:

BuzzMEDIA                    Date:  October____, 2005

    By:

    _____
    Andrew Wright

Ultimate Creations, Inc.

    By:  _____

        Warrior
        its owner,              Date: October____, 2005

*8*

**EXHIBIT B**

1   Andrew Wright

2   5 Lambert Johnson Drive

3   Ocean, NJ 07712

4   732-693-2851

5   Defendant, Pro Se

6   **IN THE UNITED STATES DISTRICT COURT**

7   **FOR THE DISTRICT COURT OF ARIZONA**

8

9   Ultimate Creations, Inc.,                    )   Case No.: CV05-3713-PHX-DKD

10              Plaintiff,                        )

11        vs.                                     )   **DECLARATION OF ANDREW WRIGHT IN FURTHER SUPPORT OF**

12   Andrew Wright, and Jane Doe Wright,          )   **DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO**

13              Defendant                         )   **RULE 12(b).**

14                                                )

15

16        I, ANDREW WRIGHT, declare under penalty of perjury as follows:

17        1.      I reside in Ocean Township, New Jersey.

18        2.      My company, BuzzMedia Productions, LLC, was formed in the State of New

19   Jersey.

20        3.      I have never been to the State of Arizona.

21        4.      I have not transacted any business within the State of Arizona. Nor has

22   BuzzMedia Productions, LLC.

23        5.      It was never discussed or agreed upon that I needed to go to Arizona in order to

24   complete the project.

25        6.      In August of 2005 Warrior told me about his plans to look for and buy land in

26   Arizona. Warrior never even told me that he had actually bought "Warrior" property on which

27   to build his "Warrior" home. Even if Warrior did buy property it was never discussed that the

28   building of a "Warrior" home was to be incorporated into the project. The approval and building

Declaration of Andrew Wright in Further Support of his Motion to Dismiss. - 1

process of a new home, and the family's relocation could easily take more than a year or two to complete.  Obviously, the project was not to include this.

7.      It was never part of the agreement that I would go to the storage facility in Arizona because Warrior has ample memorabilia at his home in New Mexico.  Warrior tried to entice me into signing the Amendment No. 2 by telling me that if I sign it he would *let me* go to the storage facility.

8.      I have already expended a tremendous amount of time and money into the project, and into responding to this frivolous claim.  I am presently working at a top New York radio station on a trial basis in hopes of obtaining a job as a producer for its morning show.  I would definitely lose this opportunity if I were forced to go to Arizona.  In addition I cannot financially afford to go to Arizona to defend myself.


I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the foregoing is true and correct.

Date: _3 -10-06_                      _____

                                      ANDREW WRIGHT


Declaration of Andrew Wright in Further Support of his Motion to Dismiss. - 2

**EXHIBIT C**

Production schedule

April 3,   Trailer shoot, Washington DC

May 13-16,  London Expo, England

May 27-30,  Memorial Day shooting at Warrior's home in NM

June 15-18,  Warrior's birthday shoot in NM

July 1-4,  A Patriotic celebration with Warrior and family in NM

August 5-8,  General filming in NM

September 2-5,  Labor Day at Warrior's home in NM

September-November will be post-production, editing, replication, marketing, appearances, and general execution of final product DVD

All dates and scheduling tentative and subject to change

**EXHIBIT D**

New Production Schedule(Warrior permitting) October-December 2005

August 22-26, West Coast, LA
Interview with Borden on the 22nd 10:00am,
Interview with Jakks on the 22nd 4:30pm
Interview with RVD?  Possible, but not confirmed.
Interview with Warrior(and, or Steve Asher)?  Not confirmed

August 29-Sept 2, East Coast, NC
Interview with Matt and Jeff Hardy

September
Tentative dates for Warrior speeches?  If any, arrangements for filming will be made.
Tentative interviews with Sherri Martel and Doc Neely
Return to UCONN?

October
Tentative dates for Warrior speeches?
21-31, Halloween, if available with Warrior and family, arrangement for filming
Interview with Warrior's mother and immediate family, en route to NM, if available

November
23-26?
Thanksgiving.  If possible, and acceptable, a true American tradition with Warrior and
family

December
20-31?
Birthdays all around for Warrior's daughters and wife,
Christmas and New Years Eve.

CONCLUSION, entering post-production, editing, and distribution development.

**EXHIBIT E**

**From:** "andrew wright" <andreww_wright@yahoo.com>
**To:** <mrwarrior@earthlink.net>; <andreww_wright@yahoo.com>
**Sent:** Wednesday, August 24, 2005 7:08 PM
**Subject:** Re: Fwd: RE: Steve Borden -w- BuzzMedia/ Ultimate Warrior Documentary Contract

Warrior, sorry to hear about your sickness. Im sure
you'll overpower it...

I see youre having some difficulties with your
WarriorWorkout and Daniel. If you need some help...

Distribution:  Warrior, we need to be clear here.
Nowhere in the contract does it state specifics about
hows/whens/wheres of distribution.  Simply stated,
there is no distribution deal, nor will I be able to
secure distribution until I am able to 'shop' my film
to prospective centers.

The company I have mentioned to you, BigVision
Entertainment, particularly a gentleman name Kevin
Kleinrock, located in VanNuys, have expressed
interest, but I need a completed film, or this
'mini'-movie, before a deal would ever be considered.
So, therefore, there is no breach of contract...but
when available, this deal will be made with you in the
middle of it.  THERE IS NO FURTHER INFORMATION THAN
THAT...and, speaking of breach of contract, since you
like to threaten as much, you are now dangerously
close to it yourself.

I understand your personal problems with me, but you
have systematically pulled back from communication
everytime something bothers you. I have documented
every single phone call made to you, which you dont
pickup or return.  This is unprofessional.  ALSO, you
have denied me the opportunity to see you when I was
already in the West Coast?!

Your contract with me stipulates that no unreasonable
request to be interviewed or contacted could be
denied...yet that is what you're doing.  Just to let
you know, contractually, I have absolutely no
obligation to appease your demand for this
'mini'-movie.  In fact, in legal terms, its
ridiculous.  You dont have any negotiating room to
tell me your participation is contingent on my
completing this test-run.  It's not in the contract.
So any '10-14' day demand on a 'mini'-movie is absurd.
 I might be able to give you something by 9-15.  You
may know that production and editing takes time,
especially if you want it to be good.

In simple black and white.  You have to make yourself
available to me, you signed the contract.  Any
reservations you had about me or the project should
have been addressed before you signed, not now.

Its too bad youre not helping me investigate your own life. I have made MANY requests for you to send me footage of the animation, to which I have never received. That also, was something I was looking forward to.

Steve and the guys at Jakks were all great experiences that I feel enriched me in many ways. Steve really cares for you, and there is nothing he wouldn't do for you(straight from his mouth). He said had you never asked for his participation, he never would have give it...

The footage, I will happily send you, but, once again, in the alotted 10 days I have to do so. I have a life too, and other projects, just like you...

Warrior, once again, if this has to be hostile...so be it. I can still work with you and make a great project. Your refusal to see me, WHILE I WAS RIGHT IN YOUR BACKYARD, has not gone undocumented. If you wanted to meet, but were too pissed off, that is not my problem. At least see me, yell at me, strike me down or something, but lets pick back up and make it to the finish line!

In conclusion.

1- Im still here to help you if asked.

2- The completely non-obligatory mini-movie will be ready around the 15th of Sept.

3- You will receive all interview footage, un-edited, within 10 days of today, which will be Sept. 3, if I am not mistaken.

Just for the record, Peter at Jakks spoke very highly of you and said your demands for perfection are what drove him to do such great work.

Steve said, for the record, he would love to work an angle with you, anytime, because your mutual history is so well known. He was VERY enthused on that idea, and disappointed it didn't happen in WCW.

Very interesting on all angles...

Until next time...maybe you could pick up the phone and call me? It would be nice.

Andrew


--- Mr Warrior <mrwarrior@earthlink.net> wrote:

> Andrew, hello. Hope your trip went well and that it
> was productive. Please turn around all
> that was filmed and get it to me asap. Thank you.
>
> Have given your devised production schedule a
> once-over. As it stands right now, film
> needs to be completed by November.
>
> Mini-film you should get to me within 10-14 days.
> First of Oct. will not work. You prove
> production skills here, I can move to immediately
> involve myself and get further filming
> of myself done.
>
> I immediately need all distribution material and
> information. I have the right to be in
> the loop on this and you must provide me with what
> you have. I'm not asking again. Next
> time I have to bring it up, it will be through my
> lawyers to tell you that you are
> breaching the contract by not providing it.
>
> Working through a 24 hr virus of some sort, here.
> The kids went to see Grandma, picked it
> up on the planes and we are passing it
> around...anyway, I will get back to you within a
> day or two.
>
> Just wanted to check in, and be clear that this
> project is not going into first of next
> year.
>
> Warrior