**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ultimate Creations, Inc., | No. CV 05-3713-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Andrew Wright, and Jane Doe Wright, | |
| Defendants. | |

Defendant Andrew Wright, proceeding pro se, has filed a motion to dismiss the complaint based on improper venue and lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and (3) (Doc. 7) supported by a legal brief (Doc. 9) and his Declaration. (Doc. 10). Plaintiff has filed a response in opposition to the motion to dismiss (Doc. 11) and Defendant has filed a reply. (Doc. 12). Plaintiff has filed a motion to strike Defendant's reply (Doc. 13) and Defendant has filed a response in opposition (Doc. 15) and his Declaration. (Doc. 14). The Court enters this Order on these pending motions.

Plaintiff has moved to strike Defendant's reply because it was untimely filed. Plaintiff's motion to strike (Doc. 13) is denied.

Plaintiff has filed a complaint asserting claims for breach of contract and federal trademark violation under the Lanham Act, 15 U.S.C. §§ 1051 et seq. Plaintiff Ultimate Creations, Inc. is an Arizona corporation and Defendant is a resident and citizen of New

Jersey. As alleged in the complaint, on or about February 22, 2005, Plaintiff entered into a Film Documentary Development Contract ("Contract") with Defendant that provided that Defendant was to film, edit, produce, and distribute versions of a documentary styled film in cooperation with Plaintiff. On July 25, 2005, the parties executed Amendment No. 1 to the Contract.

According to the Contract, Defendant pursued this venture on behalf of BuzzMEDIA. Further according to the Contract, "the project [was] understood by the parties to be a documentary-style film about the life, career, and future of Warrior, the creator, owner, and performer of the Sports Entertainment/Professional Wrestling character Ultimate Warrior." (Doc. 1, Exh. 1 - Contract at Article 2). As further alleged in the complaint, Defendant was required to provide Plaintiff with a DVD version of the project according to a schedule as described in the Contract and the version of the project was to be completed within an appropriate time and be suitable material for sale and as meeting Plaintiff's standards for production and content quality. Plaintiff further alleges in the complaint that Defendant was to compensate Plaintiff by paying a specific flat fee amount plus percentage profits from film sales. According to the Complaint, Defendant paid Plaintiff an initial payment as contemplated by the parties within five days of the signing of the agreement but Defendant thereafter failed to pay the balance of the flat fee or bring the project to a successful conclusion as required.

In support of the breach of contract claim, Plaintiff alleges that it was the intent of the parties to provide a positive piece on Warrior to be used for marketing but a review of the footage reveals negative footage. Plaintiff further alleges that the quality of the work was not up to the standards expected and that Defendant "was requested to come to New Mexico to meet with Warrior's family and to film and he refused." Plaintiff alleges that there has been no financial backing and that Defendant is in breach for falling behind the production schedule agreed to by the parties. In support of its trademark violation claim, Plaintiff alleges that Defendant's use of the intellectual property is in violation of the Contract, has diminished its value and amounts to misappropriation. Plaintiff seeks damages in the sum

1   of $190,000.00, plus interest and attorneys' fees, and the return of all footage, notes, films,
2   disks, tapes and all materials produced in the project.   Jurisdiction is based on federal
3   question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332.
4         Under 28 U.S.C. § 1391(b), venue in a civil action in which jurisdiction is not founded
5   solely on diversity of citizenship generally may be brought in (1) a judicial district where any
6   defendant resides, if all defendants reside in the same State, (2) a judicial district in which
7   a substantial part of the events or omissions giving rise to the claim occurred, or a substantial
8   part of property that is the subject of the action is situated, or (3) a judicial district in which
9   any defendant may be found, if there is no district in which the action may otherwise be
10  brought. Title 28, United States Code, section 1406(a) provides that "[t]he district court of
11  a district in which is filed a case laying venue in the wrong division or district shall dismiss,
12  or if it be in the interest of justice, transfer such case to any district or division in which it
13  could have been brought."
14        In moving to dismiss the complaint based on improper venue, Defendant points out
15  that he signed the Contract on behalf of BuzzMEDIA, a Limited Liability Company formed
16  in New Jersey.  Defendant emphasizes that he is a resident of New Jersey.  Defendant
17  additionally points out that the Contract was signed by "Warrior", the President of Plaintiff
18  Ultimate Creations, who lives in New Mexico.  Defendant asserts that no provision of the
19  Contract indicated that Plaintiff is an Arizona corporation. In addition, the notice provision
20  of the original Contract stated that all notices were to be sent to Ultimate Creations at an
21  address in Knoxville, Tennessee. This notice provision was revised in the parties'
22  Amendment No. 1 to provide a mailing address for "Warrior" and Plaintiff Ultimate
23  Creations in Santa Fe, New Mexico.  Defendant contends that no events relevant to the
24  Contract have occurred in Arizona.  Defendant has attached his sworn Declaration in which
25  he states that he has never been to the State of Arizona.
26        In support of its response, Plaintiff has submitted the sworn Declaration of "Warrior"
27  who states that he is indeed the President of Ultimate Creations and that "[i]t was always part
28  of the DVD project that [Defendant] would conduct much of the work in Maricopa County,

Arizona."  (Doc. 11 - "Warrior" Declaration at paras. 2 & 4).  "Warrior" states that he presently resides in New Mexico but that he owns 20 acres in Carefree, Arizona and plans to return there.  (id., at para. 9).  "Warrior" further states as follows regarding the completion of the project:

> 5.  It was agreed that an absolutely necessary component of the DVD project was for [Defendant] to go through all of my 30,000 WWF litigation files and all of my Dingo Warrior/Ultimate Warrior career costumes, photos, magazines, titles and other memorabilia, which are all located in a 5000 sq. ft. of storage in Maricopa County, Arizona, as they have been for over 6 years now.
>
> 6.  It was absolutely imperative to do the DVD project properly that [Defendant] travel to Maricopa County, Arizona and spend several days, if not weeks, there.  This was implicit in the Agreement.  To be able to even begin to pursue the project, a trip to Arizona to obtain and review vital materials would have been necessary.
>
> 7.  [Defendant] was to interview me in New Mexico and in several scenic Arizona locals like Sedona and the Grand Canyon. [Defendant] was aware that I own property in Maricopa County, Arizona and it was contemplated that I would be relocating to Maricopa County, Arizona.

(id., "Warrior" Declaration at paras. 5-7).  Plaintiff contends that a substantial part of the Agreement was to be fulfilled by actions taken in Arizona.  Plaintiff further points out that "Warrior" has no contacts with New Jersey and that litigating this case in Arizona will not place an undue burden on Defendant.

Along with his reply, Defendant has submitted a second sworn Declaration in which he states that "[i]t was never discussed or agreed upon that [he] needed to go to Arizona in order to complete the project." (Doc. 12 - Exh. B, Wright Declaration at para. 5).  Defendant further states that "[i]t was never part of the agreement that [he] would go to the storage facility in Arizona because Warrior has ample memorabilia at his home in New Mexico. ... " (id., at para. 7).  Defendant also states that he cannot financially travel to Arizona to defend himself in this case.  (id., at para. 8).  Defendant has submitted alleged production schedules as exhibits to his reply.  (Doc. 12, Exh. C & D).  These alleged production schedules indicate locations in New Mexico and elsewhere but none in Arizona.  Defendant also has submitted

- 4 -

an alleged e-mail from "Warrior" which purportedly indicated that "Warrior" received the production schedule but which does not mention any need to travel to Arizona. (id., Exh. E). Defendant contends in his reply that Plaintiff has disregarded its obligations under the Contract by refusing Defendant the opportunity to interview "Warrior."

In this case, Plaintiff bases its claim of venue in the District of Arizona pursuant to § 1391 as providing, "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." (see Doc. 11- Plaintiff's Response at p. 4). In Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986), the Ninth Circuit held in a breach of contract case that "the spirit of 28 U.S.C. § 1391(a) is better served if venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation." The Ninth Circuit favored this rationale "because the place of performance is determined at the inception of the contract and therefore the parties can anticipate where they may be sued." Id. At the time, section 1391(a), which applies to cases founded solely on diversity jurisdiction, provided in part for venue in the judicial district "in which the claim arose." Section 1391 was amended in 1990 after the decision in Decker Coal. The parties in this case have not cited any case law authority in support of their respective positions as to the propriety of venue in the District of Arizona.

The Court has researched the issue of proper venue in a breach of contract case under § 1391(b)(2), which applies to cases not founded solely on diversity. In Daniel v. American Board of Emergency Medicine, 428 F.3d 408, 432 (2d Cir. 2005), the Second Circuit discussed the provisions of § 1391(b)(2) both pre- and post-amendment. The appellate court noted that the Supreme Court had explained before the amendment to § 1391 that "[i]n most instances, the purpose of statutorily defined venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Id. (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 183-84 (1979)). In Daniel, the Second Circuit suggested that the court should apply the following two-part inquiry: (1) the court should identify the nature of the claim and the acts or omissions that the plaintiff alleges give rise to those claims; and (2) the court should determine whether a substantial part of those acts

1  or omissions occurred in the district where suit was filed, that is, "whether 'significant events
2  or omissions material to [those] claim[s] ... have occurred in the district in question.'" Id.
3  (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005), and citing Jenkins
4  Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003)). In Glasbrenner, the Second
5  Circuit cautioned that "the adjective 'substantial'" should be taken seriously. Id., 417 F.3d
6  at 357. The appellate court observed that "for venue to be proper, *significant* events or
7  omissions *material* to the plaintiff's claim must have occurred in the district in question, even
8  if other material events occurred elsewhere.. It would be error, for instance, to treat the
9  venue statute's 'substantial part' test as mirroring the minimum contacts test employed in
10 personal jurisdiction inquiries." Id. (emphasis in original).

11 In this case, the nature of the claims are breach of contract and alleged trademark
12 violation. The gist of the parties' dispute, however, appears to be centered around lack of
13 performance of their alleged Contract. Daniel, 428 F.3d at 432-33 ("'[s]ubstantiality' for
14 venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the
15 overall nature of the plaintiff's claims and the nature of the specific events or omissions in
16 the forum, not by simply adding up the number of contacts"). Plaintiff essentially alleges in
17 the complaint that Defendant has failed to produce a film that meets the standards anticipated
18 by the parties and to otherwise fulfill his obligations under the Contract. Plaintiff specifically
19 alleges in support of its breach of contract claim that Defendant "was requested to come to
20 New Mexico to meet with Warrior's family and to film and he refused." (Doc. 1, complaint
21 at para. 19 (C)).

22 Plaintiff has not set forth any allegation in the complaint that Defendant's actionable
23 conduct is based on his failure to travel to Arizona in furtherance of the project and Contract.
24 Similarly, no provision of the Contract or Amendment No. 1 included as a term that
25 Defendant was to fulfill his obligations under the Contract by traveling to Arizona to work
26 on the project. The Contract when originally executed by the parties contained a provision
27 that any dispute would be governed by the laws of the State of Tennessee exclusively in that
28 jurisdiction. (Doc. 1, Exhibit 1 - Contract, Article 15). In their Amendment No. 1, the

1 parties deleted Article 15 and did not include any choice of law provision.  (Doc. 1,
2 Amendment No. 1, paragraphs 3 & 6).

3 It is not mentioned in either the Contract or Amendment No. 1 that Plaintiff is an
4 Arizona corporation. No objective fact of record shows a nexus between performance of the
5 Contract and the State of Arizona.  No physical act or omission relevant to the negotiation
6 of the Contract, its execution or its alleged breach has occurred in the State of Arizona.  The
7 only record evidence that indicates that anything was to occur in Arizona is the Declaration
8 of "Warrior" to the effect that the parties contemplated filming in Arizona.  However,
9 Plaintiff's assertion in the complaint that "Defendant was requested to come to New Mexico
10 to meet with Warrior's family and to film and he refused" contradicts this representation.

11 Based on the pleadings, documents and declarations of record, Plaintiff has not made
12 a prima facie showing of venue in the District of Arizona under § 1391(b)(2).  Plaintiff has
13 not moved for a transfer of venue and so the Court in its discretion has declined to consider
14 the appropriate venue on the present record.  Having determined that venue does not lay in
15 the District of Arizona, the Court has not considered Defendant's motion to dismiss for lack
16 of personal jurisdiction.

17 **Accordingly**,

18 **IT IS ORDERED** that Plaintiff's motion to strike (Doc. 13) is denied.

19 **IT IS FURTHER ORDERED** that Defendant's motion to dismiss the complaint
20 based on improper venue (Doc. 7) is granted.

21 **IT IS FURTHER ORDERED** that the complaint and action are dismissed without
22 prejudice based on improper venue under Fed.R.Civ.P. 12(b)(3).

23 DATED this 28th day of August, 2006.

Mary H. Murgula
United States District Judge

- 7 -